IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MFB FERTILITY INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-CV-17000 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| WONDFO USA Co., LTD., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION & ORDER**

MFB Fertility Inc. brings this one-count complaint for Copyright and Trademark Infringement against Wondfo USA Co., LTD. The complaint alleges copyright infringement pursuant to the Copyright Act of 1976, as amended, 17 U.S.C.§ 101, et. seq. On May 8, 2024, defendant Wondfo USA Co., Ltd. ("Wondfo") moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 18). For the reasons discussed below, defendant's motion is denied.

**BACKGROUND**

According to plaintiff's complaint, MFB Fertility, Inc. ("MFB") is a Colorado-based corporation founded by fertility expert Dr. Amy Beckley ("Beckley"). In 2016, Beckley invented the at-home fertility test, PROOV, which works by measuring the presence of progesterone (PdG) metabolites in urine, confirming whether ovulation has taken place. Plaintiff alleges that Beckley's trademarked Ovulation Double Check tests, sold throughout the United States through online retailers, were the first at-home ovulation confirmation tests to obtain clearance by the United States Food and Drug Administration. Since November 2020, plaintiff states that it has owned the right, title and interest in the United States Copyright Certificate of

Registration for the work entitled "Ovulation Double Check," which plaintiff alleges is an original work of authorship that includes a product guide.

According to the complaint, defendant is a competitor, an online retailer that also sells progesterone (PdG) test strips on Amazon and other marketplaces, which it sells as the Wondfo Progesterone Urine (PdG) Tests. When plaintiff's test first came to market in 2017, it entered a ten-month distribution agreement with Easy Healthcare, whose preferred manufacturer at the time was defendant. Before beginning work together, plaintiff alleges that it "required all parties execute confidentiality agreements to safeguard plaintiff's confidential, proprietary and/or trade secret information." However, plaintiff alleges that since 2023, when it entered the marketplace itself, defendant has infringed on plaintiff's copyright by promoting, advertising, and selling products that are substantially similar to plaintiff's copyrighted work.

The allegedly infringing elements of defendant's product include the order and selection of four points in the product's instruction section, which encompass storage and stability, precautions, and instructions for use. In addition, plaintiff alleges the ovulation cycles phases graph, showing the estrogen and progesterone spikes in a female's body during a typical hormonal cycle, as found in plaintiff's copyrighted work, was "copied and used in the Defendants' infringing work, as shown in the identical language and color selection." In the Frequently Asked Questions ("FAQ") section, plaintiff has alleged that the order and phrasing of six stated questions are nearly verbatim. The questions include: "Do I need to use first morning urine?" (plaintiff) vs. "Do I have to use first morning urine?" (defendant); "My test has two lines, that is a positive test[,] right?" (plaintiff and defendant); and "I still see a very faint, greyish line in the test line area. Is my test positive?" (plaintiff) vs. "I see a very faint, greyish line in the test line area. Is my test positive?" (defendant).

Defendant asks this court to dismiss plaintiff's complaint for failure to state a claim under Rule 12(b)(6).

## LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Fed. R. Civ. Pro. 12(b)(6). For a claim to have "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## DISCUSSION

To state a claim for copyright infringement, a plaintiff must allege: "(1) ownership of a valid legal copyright; and (2) copying of constituent elements of the work that are original. Incredible Technologies, Inc. v. Virtual Technologies, Inc., 400 F. 3d 1007, 1011 (7th Cir. 2005).[1] In arguing that the complaint should be dismissed in its entirety, with prejudice, defendant presents two main arguments. First, defendant argues that plaintiff does not sufficiently allege that defendant's product has infringed upon its copyright's protectable work.

---

[1] A certificate of registration from the U.S. Register of Copyrights constitutes prima facie evidence of the validity of a copyright." Wildlife Express Corp v. Carol Wright Sales, Inc., 18 F. 3d 502, 507 (7th Cir. 1994) (citing 17 U.S.C. § 410(c)). Plaintiff's ownership of the pertinent copyright for "Ovulation Double Check" product and the validity of that copyright since 2020 is not challenged. Nor is it disputed that plaintiff's product became readily available and accessible in the market well before defendant introduced its product in 2023. Therefore, the court is tasked with determining whether the instructional information at issue can be fairly assessed as original work entitled to copyright protection.

Second, defendant argues that even if the content is protectable, plaintiff has not plausibly alleged that defendant has copied it, infringing the copyright.

Addressing the first prong of its argument, defendant states, "[plaintiff] does not hold a monopoly over the methods for proper use of PdG test products," but "in fact, the inclusion of such information is required under [Food and Drug Administration ("FDA")] regulations governing the sale of such products," making the disputed instructions, graph, and FAQ section unprotectable elements of the work. Plaintiff counters that the copyright contains original authorship copied by defendant, with a certain arrangement and order in the instructions "not dictated by the application of the product itself."

"Original," as the term is used in copyright law, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. 1 M. Nimmer & D. Nimmer, Copyright §§ 2.01[A], [B] (1990). This is a low bar, as a vast majority of works possess some basic form of creativity, "no matter how rude, humble or obvious" it might be. Id. at § 1.08 [C] [1]. Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying. Id.

Ideas and facts, by their nature, are not protectable under copyright law. Publications Int'l, Ltd. v. Meredith Corp., 88 F.3d 473, 479 (7th Cir. 1996). As such, "copyright protection is given only to the expression of the idea—not the idea itself." Mazer v. Stein, 347 U.S. 201, 217 (1954). Drawing the line is necessarily a flexible exercise where copyright law must strike a "delicate equilibrium." Sassafras Enterprises, 889 F. Supp. 343, 346 (N.D. Ill. 1995) (quoting Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 696 (2d Cir. 1992)). In maintenance of this delicate equilibrium, "the Copyright Act does not protect general ideas, but

only the particular expression of an idea." Hobbs v. John, 722 F.3d 1089, 1094 (7th Cir. 2013) (emphasis added). Therefore, while facts themselves are not copyrightable, compilations of facts generally are protectable. Feist Publications, Inc. v. Rural Telephone Service Co., Inc. 499 U.S. 340, 344 (1991).

Instructions, promotional materials and product descriptions are entitled to copyright protection, and yet it is "axiomatic" that copyright law does not encompass "forms of expression dictated solely at functional consideration on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection." ABRO Indus., Inc. v. 1 NEW Trade, Inc., No. 3:14-CV-1984-TLS, 2017 WL 4954698, at *7 (N.D. Ind. Oct. 30, 2017) (internal quotations omitted). The court noted in Sassafras Enterprises v. Roscho, Inc. – a case cited frequently by plaintiff—that

> "[i]t is true, of course, that the suggested type of side-by-side comparison is really not the right one to make. Rather the trick is to begin with the allegedly aggrieved work in one hand and nothing in the other hand and ask, 'Is it copyrightable? And if so, in what respects? To what extent?' Those limiting questions define whether a comparison needs to be made at all and, if so, also define the universe for such a comparison." Sassafras Enterprises v. Roshco, Inc., 889 F. Supp. 343, 348 (N.D. Ill. 1995).

In Sassafras, the plaintiff brought a copyright infringement action against defendant competitor Roscho over a pamphlet and booklet of instructions over usage of a pizza stone. Id. at 344–45. The defendant's pamphlet mirrored the contents of both the plaintiff's written works in several respects, with identical instructions about cleaning the stone and the stone's staining after use. Id. at 345. Yet, the court noted the decision stands out due to its examination of one of copyright law's most venerable concepts—the idea versus expression distinction—on writings functioning as instructions about use of a product. Id.

Defendant correctly notes that a work is not subject to copyright protection where its content is dictated by utilitarian concerns. Incredible Technologies, Inc. v. Virtual Technologies, Inc., 400 F. 3d 1007, 1012 (7th Cir. 2005). In ABRO Industries, Inc. v. 1 NEW Trade, Inc., 2017 WL 4954698, at *4 (N.D. Ind. Oct. 30, 2017), an automative parts and supplies manufacturer alleged that the defendant infringed on its copyright for materials related to its competing carburetor and choke cleaner. In that case, the plaintiff took issue with the defendant's carburetor image included on its packaging, its "nearly identical" shape and name (both products were called the "Carb & Choke Cleaner"), as well as the instructions and warnings sold alongside defendant's products. Id. at *7. This included the defendant's instructions to: "Remove air filter and spray exterior and interior of carburetor. While engine is idling spray short bursts inside carburetor intake. Also can be used as general-purpose degreaser when working with varnished parts of engine." Id. at *10. Plaintiff claimed that these instructions infringed on its own instructions, which read: "Remove the air filter and spray exterior carburetor linkage. To remove gum and varnish from the throttle plate, spray short bursts into the carburetor bowl while the engine is idling." Id.

In ABRO, the court concluded that it could not find substantial similarity between the instructions and warnings on the label because the plaintiff had "no monopoly on the method of cleaning a carburetor." Id. The court explained that using "the same words and phrases does not amount to stealing protected expression," "especially" when "the [disputed] words and phrases are necessary to describe an unprotected process." Id. at *10. Regarding the cleaner label, the court reasoned that the defendant spent a "significant amount of time arguing over the similarity between the two labels rather than the similarities between the copyrightable aspects of the labels." Id. at *11.

With respect to the instant case, the FDA requires in vitro product labels to include the product's name and intended use(s), a statement of warnings or precautions, as well as "[i]nstructions for a simple method by which the user can reasonably determine that the product meets its appropriate standards." 21 C.F.R. § 809.10(a)(6)(iii). In Feist Publications, Inc. v. Rural Tel. Serv. Co., the Supreme Court noted that the originality requirement for copyright protection may not be met when disclosures are made to adhere to legislation. Feist Publications, Inc. v. Rural Tel. Serv. Co, 499 U.S. 340, 363 (1991) (determining that "one could plausibly conclude that this selection was dictated by state law, not by" the plaintiff's original creativity). In another recent copyright infringement suit brought by plaintiff against a different competitor, the late Judge Leinenweber noted that for a competitor not to use the same phrases including "cycle," "PdG Test Strips," and "Confirm Ovulation," it would "ostensibly be required to violate the FDA's labeling requirements for in vitro diagnostic products." MFB Fertility Inc. v. Action Care Mobile Veterinary Clinic, LLC, No. 1:23-CV-03854, 2024 WL 1719347, at *5 (Apr. 22, 2024) (citing 21 C.F.R. § 809.10).

Plaintiff does not dispute that the ovulation graph's pictorial description of the hormonal spikes of estrogen and progesterone that, in concert, create a window of fertility, is based on scientific data. Therefore, the court concludes that plaintiff has not plausibly alleged that the graph includes protectable elements of its copyright.

However, while plaintiff has not alleged proprietorship over ovulation tracking at home via the analysis of one's urine to conceive—or avoid conceiving—a child, plaintiff's instructions, especially the precautions and storage and stability sections, are not solely utilitarian. Rather, they go beyond what is necessary to describe an unprotected process. These could be worded differently, with portions, such as removing the test strip from its sealed pouch

and collecting morning urine arranged in a different order. Additionally, based on plaintiff's factual allegations, the FAQ section encompasses an area not required under the FDA statute and therefore constitutes a protectable expression of ideas.

Because the court concludes that plaintiff's instructions and FAQ sections constitute a protectable expression of ideas, the question remains whether plaintiff has plausibly alleged that defendant copied its work in those specific sections. As discussed above, to state a claim for copyright infringement, a plaintiff must allege that defendant "cop[ied]constituent elements of the work that are original." Feist Publ'ns, Inc., 499 U.S. 340 at 361. When direct evidence such as an admission of copying is not available, the plaintiff must allege facts that show that, (1) the defendant had "access" — that is, a reasonable opportunity to copy the work, and that (2) the works at issue are substantially similar in their protectable expression. MFB Fertility, Inc., No. 23 CV 3854, 2024 WL 1719347, at *3 (citing Peters v. West, 692 F.3d 629, 633 (7th Cir. 2012)).

Because access to the work is unchallenged,[2] the court is tasked with determining whether plaintiff has plausibly alleged that the protectable elements of the work in question (the general instructions and FAQ section) are substantially similar. "In contexts where opportunities for originality are indeed limited by functional requirements, 'the substantial similarity requirement is particularly hard to satisfy,' requiring a threshold showing of 'striking' similarity or verbatim copying." MFB Fertility, Inc., No. 23 CV 3854, 2024 WL 1719347, at *3 (citing Design Basics LLC v. Lexington Homes, Inc., 858 F.3d 1093, 1101 (7th Cir. 2017)). In the second prong of defendant's motion, defendant contends that its instructions are not "sufficiently

---

[2] Plaintiff's ownership of the pertinent copyright for "Ovulation Double Check" product and the validity of that copyright since 2020 are not challenged. Nor is it disputed that plaintiff's product became readily available and accessible in the market well before defendant introduced its own product in 2023.

similar enough to MFB's instructions to infringe" with only "portions sharing the same or similar wording (as can be expected as standard or unavoidable scenes a faire)."

Adhering to 21 C.F.R. § 809.10 is unquestionably a functional requirement of a PdG test, leaving only a certain number of ways for competitors to swaths of the instructional information. 1 M. Nimmer, Nimmer on Copyright, §2.11[A] [B] (1968). What the regulation does not offer direction on, however, is the order of the instructions and FAQs.

Plaintiff alleges that defendant copied its four ordered instructions and six FAQs, and claims in both areas that plaintiff and defendant's questions have nearly identical wording, order, and arrangement. Plaintiff's first instruction, to "collect first morning urine in a clean, dry plastic or glass container," reads the same as defendant's first instruction, followed by a directive to remove the test strip from its pouch, and dip the white end of the strip into the urine sample for several seconds with the arrows pointing toward the urine. Both plaintiff's and defendant's instructions guide the test-taker to lay the strip on a clean surface, cautioning them that first morning urine is best for test results.

Regarding the FAQs: plaintiff alleges that the first question in plaintiff's and defendant's instructions, which address the use of first morning urine, features identical language in its response, with both instructions noting "[t]he test is most accurate with first morning urine. For best results, use only first morning urine for testing." Similarly, plaintiff alleges that defendant's fourth question: "I see a very faint, greyish line in the test line area. Is my test positive?" also reads the same. Plaintiff alleges that defendant's FAQ differs only by the omission of one word: evaporation. Otherwise, plaintiff alleges, it is identical to plaintiff's explanation, which reads: "Yes, occasionally there are compounds in the urine that react with the test line area and create a

very slight greyish evaporation line. If your test has no pink color in the test line area, it is considered positive."

In another example, plaintiff alleges the question of, "Do alcohol or other medications affect the results?" is identical, while defendant's response, "Alcohol, hormonal birth control (pills, patches, rings, etc.) and any medication containing natural or synthetic progesterone can affect your results" is near-verbatim to plaintiff's, which reads "Yes, hormonal birth control (pills, patches, rings, etc.) and any medication containing natural or synthetic progesterone will affect your results."  Thus, plaintiff has sufficiently alleged that the Frequently Asked Questions Section on defendant's product – which is not addressed by the FDA's labeling requirements—is substantially similar to the corresponding section on plaintiff's product.  Other questions could be addressed in the FAQ section, with different wording, or in a more dramatically different order.

Accordingly, the court denies defendant's motion.  Because the "ovulation cycle phases" graph describes a ubiquitous process, plaintiff has not alleged that defendant infringed on its protectable work.  However, as discussed above, plaintiff plausibly alleges that a portion of the instructions and FAQs are in fact protectable, creative work, from which defendant copied original elements. The wording and order of the general instructions and FAQ sections on defendant's product are substantially similar to the corresponding sections of plaintiff's product.

## CONCLUSION

For the reasons discussed above, the court denies defendant's motion to dismiss (Doc. 18), in part.  Plaintiff is directed to file an amended complaint consistent with the court's opinion on or before September 24, 2024.  Defendant is directed to file an answer to plaintiff's amended

complaint on or before October 15, 2024. The parties are directed to file a joint status report using this court's form on or before October 22, 2024.

        **ENTER:**

        **Robert W. Gettleman**
        **United States District Judge**

**DATE: September 5, 2024**